**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **AVADO BRANDS, INC.,** | | |
| | **Plaintiff,** | |
| **v.** | | **1:05-cv-1342-WSD** |
| **KPMG LLP, et al.,** | | |
| | **Defendants.** | |

## ORDER

This matter is before the Court on Plaintiff Avado Brands, Inc.'s Motion to Remand Case to State Court of Fulton County and for Preliminary Discovery [10], and Defendant KPMG LLP's Motion to Stay Action Pending Resolution of Class Issues in Becnel v. KPMG LLP and Simon v. KPMG LLP, and thereafter, to Compel Arbitration and Dismiss or, alternatively, for Additional Time to Respond to the Amended Complaint ("Def. KPMG's Mot. to Compel Arbitration") [19].[1]

---

[1]  This matter is also before the Court on Defendants R.J. Ruble, Sidley Austin Brown & Wood, LLP, and Jeffrey A. Eischeid's Motions to Stay Action, and thereafter, to Compel Arbitration and Dismiss, or, alternatively, for Additional Time to Respond to the Amended Complaint [20, 21, 27], which expressly adopt and incorporate by reference Defendant KPMG LLP's similarly-titled motion, Plaintiff's Motion for Leave to Submit Supplemental Authorities to the pending motions to remand and to compel arbitration [36], to which Defendant Jeffrey Eischeid filed a response [37], and Plaintiff's Second Motion for Leave to Submit

I.    **BACKGROUND**

On April 20, 2005, Plaintiff Avado Brands, Inc. ("Plaintiff") filed its

Complaint[2] in this action in the State Court of Fulton County, Georgia.  Plaintiff

alleges Defendants fraudulently counseled Plaintiff to implement an investment and

tax shelter strategy known as the Offshore Portfolio Investment Strategy ("OPIS").

Plaintiff alleges Defendants knew OPIS was not a valid tax avoidance mechanism,

made material misrepresentations and omitted making material statements of

pertinent facts to Plaintiff, and that Plaintiff was injured by Defendants' conduct.

Plaintiff claims Defendants, along with several non-parties to this action,

played interrelated roles in implementing OPIS.  Plaintiff alleges Defendants

KPMG, Eischeid, Sidley Austin and Ruble, along with non-parties Deutsche Bank

AG ("DBAG"), Presidio Growth LLC and John Larson, "engaged in multiple

schemes and/or transactions to defraud consumers by creating, designing,

marketing, and promoting a tax avoidance investment program and wilfully

misrepresenting or failing to disclose material facts about 'tax strategies' to the

Plaintiff and other consumers."  (First Am. Compl. ¶ 205.)  Plaintiff further alleges

_____

Supplemental Authorities [43].

[2]   On June 17, 2005, Plaintiff filed its First Amended Complaint [11].

Defendants and these non-parties "conspired together to violate the Georgia RICO statute" (id.), and "there existed a criminal enterprise made up of a group of individuals and businesses consisting of (1) KPMG and Eischeid; (2) Presidio and Larson; (3) Brown & Wood and Ruble; and (4) Deutsche Bank, AG."  (Id. ¶ 200.)

On July 15, 1998, to implement OPIS, Plaintiff opened a brokerage account with Deutsche Bank Securities, Inc. ("DBSI"), and entered a Customer's Agreement (the "Agreement") with DBSI.[3]  (See Agreement, attached as Ex. F to Notice of Removal.)  The Agreement contains the following arbitration clause:

> The UNDERSIGNED AGREES, and by carrying an Account of the Undersigned you agree, that except as inconsistent with the foregoing, all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc., as the undersigned you may elect.  If the undersigned fails to make such election, then you may make such election.  The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award may be entered in any court, state, or federal, having jurisdiction.

---

[3]  Plaintiff's name at the time it entered the Agreement was Apple South, Inc. (Pl.'s Reply to Defs.' Resps. to Mot. to Remand at 1.)

-3-

(Agreement, ¶ 14(v).)[4]

Plaintiff asserts five claims against all Defendants, including:  (1) fraud, (2) violation of the Georgia RICO statute, (3) intentional deception under Section 552, Restatement (Second) of Torts, (4) breach of fiduciary duty and (5) assumpsit. Plaintiff also asserts a claim for accounting malpractice against Defendants KPMG and Eischeid, and a claim for legal malpractice against Defendants Sidley Austin and Ruble.  Plaintiff seeks in excess of $28,000,000, and also asserts a claim for punitive damages and trebling of damages under the Georgia RICO statute, along with a claim for attorneys' fees and costs.

On May 20, 2005, Defendant KPMG removed this action to this Court, pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441.  (See Notice of Removal [1].) On June 17, 2005, Plaintiff moved to remand this case to the State Court of Fulton County.  On July 5, 2005, Defendants moved to stay, to compel arbitration and to dismiss this action.

---

[4]  DBSI, a subsidiary of DBAG, was acting as DBAG's agent in connection with the OPIS transaction.  (See Oct. 27, 1998 Letter, attached as Ex. E to Pl.'s Mot. to Remand.)

## II.   DISCUSSION

### A.   Plaintiff's Motion to Remand

Plaintiff moves to remand this action, claiming "the provisions in Title 9, U.S. Code, pertaining to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, have been improperly invoked by the Non-Signatory Defendants."  (Pl.'s Mot. to Remand at 1.)[5]  Plaintiff argues this case is distinguishable from similar cases in which courts have found removal was proper because neither DBSI nor DBAG are parties to this action.  Plaintiff further argues it "views DBSI as simply a securities dealer that took an order and executed it," and there is no arbitration or lawsuit pending between Plaintiff and DBSI or DBAG. (Pl.'s Mot. to Remand at 10-11.)  Defendants contend Plaintiff's participation in OPIS, along with its associated foreign stock transactions, was made possible by Plaintiff's opening of an account with DBSI.  Because Plaintiff signed a broad arbitration agreement with DBSI when it opened this account, and Defendants claim they may enforce the arbitration agreement under principles of equitable estoppel,

---

[5] Plaintiff also moves the Court to allow preliminary discovery to develop facts relating to Defendants' removal of this action and Defendants' motion to compel arbitration.

contract rights and agency, Defendants assert removal under § 205 was proper.

(Def. KPMG's Opp'n to Pl.'s Mot. to Remand at 3.)

The Convention on the Recognition and Enforcement of Foreign Arbitral

Awards (the "Convention") provides:

> Where the subject matter of an action or proceeding
> pending in a State court relates to an arbitration agreement
> or award falling under the Convention, the defendant or
> the defendants may, at any time before the trial thereof,
> remove such action or proceeding to the district court of
> the United States for the district and division embracing
> the place where the action or proceeding is pending.

9 U.S.C. § 205.  To determine if Defendants' removal of this action was proper,

the Court must determine:  (1) whether Plaintiff's claims "relate to" an arbitration

agreement, and (2) whether the arbitration agreement "fall[s] under the

Convention."[6]

---

[6]  In its motion to remand, Plaintiff conflates the removal and merits inquiries. (Pl.'s Mot. to Remand at 10-12.)  The Court first must determine if removal was proper, and then, if the Court determines it has jurisdiction, it must proceed to the merits and determine whether the arbitration agreement can be enforced.  See Beiser v. Weyler, 284 F.3d 665, 670-71 (5th Cir. 2002) (requiring the district court to "keep[] the jurisdictional and merits inquiries separate").

1.    *Do Plaintiff's claims relate to an arbitration agreement?*

The Eleventh Circuit has not been presented the issue before this Court.

However, the Fifth Circuit has addressed it and this Court finds its reasoning

persuasive.  In Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002), the Fifth Circuit

provides a thorough discussion of the phrase "relates to" in the context of removal

under § 205.[7]  The Fifth Circuit, noting "[t]he phrase 'relates to' generally conveys

a sense of breadth," held:

> [W]henever an arbitration agreement falling under the
> Convention could *conceivably* affect the outcome of the
> plaintiff's case, the agreement "relates to" [] the plaintiff's
> suit.  Thus, the district court will have jurisdiction under §
> 205 over just about any suit in which a defendant
> contends that an arbitration clause falling under the
> Convention provides a defense.  As long as the
> defendant's assertion is not completely absurd or
> impossible, it is at least conceivable that the arbitration
> clause will impact the disposition of the case.  That is all
> that is required to meet the low bar of "relates to."

Beiser, 284 F.3d at 669.  The court further stressed the district court must keep the

jurisdictional and merits inquiries separate.  Id. at 671-72.  "As a result, absent the

rare frivolous petition for removal, as long as the defendant claims in its petition

---

[7]  The Court interprets statutes according to their plain meaning.  See United
States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." Id.

The Beiser court held that a lawsuit involving a party that was a non-signatory to the arbitration agreement may still "relate to" the agreement. In Beiser, plaintiff was the director and only employee of a company which entered into various agreements containing arbitration clauses. Plaintiff later filed suit against the signatories to the arbitration agreements in Texas state court and defendants removed the suit to federal court under § 205. Plaintiff moved to remand, arguing the lawsuit did not "relate to" an arbitration agreement because the plaintiff had not signed the arbitration agreement in his individual capacity. The Beiser court rejected plaintiff's argument, noting that the phrase "relates to" typically means having a "connection with" or "reference to." 284 F.3d at 669. Because it was "at least conceivable that a court might pierce the corporate veil and hold him personally responsible for the contracts . . . the arbitration agreements could conceivably affect the disposition of [plaintiff]'s claims," and, therefore, the subject matter of plaintiff's lawsuit "related to" an arbitration agreement and the district court had removal jurisdiction under § 205. Beiser, 284 F.3d at 670.

Here, Plaintiff argues the lawsuit does not "relate to" an arbitration agreement because the Defendants are non-signatories to the Agreement.[8]  Defendants argue they may compel arbitration because DBSI and Plaintiff are signatories to the Agreement which enabled the transactions underlying Plaintiff's claims.  Because DBSI was acting as an agent and is a subsidiary of DBAG, and Plaintiff alleges that Defendants conspired with DBAG to harm Plaintiff, Defendants argue they may enforce the arbitration clause in the Agreement under principles of equitable estoppel, contract rights and agency.  (See Def. KPMG's Mot. to Compel Arbitration.)

It is undisputed that DBSI was acting as an agent of DBAG when it entered the Agreement which contains the arbitration provision.  It is also clear that Plaintiff's entry into the Agreement was necessary to implement OPIS, and that Plaintiff has alleged concerted action among Defendants and DBAG to harm Plaintiff.  Even if Plaintiff ultimately can establish that Defendants cannot enforce the arbitration clause, Plaintiff's lawsuit at least has a connection with the Agreement.  Defendants' argument to compel arbitration under theories of equitable

---

[8]  The situation here is distinguished from that in Beiser where defendants were signatories to the arbitration agreement and plaintiff was the non-signatory.

estoppel, contract rights and agency is not frivolous and "it is at least conceivable that the arbitration clause will impact the disposition of the case." Beiser, 284 F.3d at 669.  (See infra, section II.B (discussing non-signatories' ability to compel arbitration under a theory of equitable estoppel).)  "That is all that is required to meet the low bar of 'relates to.'"  Beiser, 284 F.3d at 669; see generally id. at 675 ("In this case, [Defendant]'s contention that the arbitration clauses under the Convention provide a defense was not fanciful.  The clauses could conceivably impact the outcome of the case; they therefore 'relate to' the subject matter of [plaintiff]'s suit.  The district court thus had jurisdiction under § 205."). Accordingly, the Court finds this action "relates to" an arbitration agreement.  See, e.g., Hansen v. KPMG, LLP, No. CV 04-10525-GLT, slip op. at 4 n.5 (C.D. Cal. Mar. 29, 2005) (holding the district court had jurisdiction under § 205 because the action "relates to" an arbitration agreement, notwithstanding that DBSI and DBAG had been dismissed with prejudice); Reddam v. KPMG LLP, No. CV 04-1227-GLT, slip op. at 3 (C.D. Cal. Dec. 14, 2004) ("[W]here, as here, the Customer's Agreement enabled Plaintiffs to implement the relevant transactions in this action, it is at minimum 'conceivable' that the arbitration clause will affect the outcome of

this action."); <u>Chew v. KPMG, LLP</u>, No. 3:04CV748BN, slip op. at 11 (S.D. Miss.

Jan. 6, 2005) (same).

            2.    *Does the arbitration agreement fall under the Convention?*

An arbitration agreement arising out of a legal relationship between two

citizens of the United States does not fall under the Convention unless the

relationship (1) involves property located abroad; (2) envisions performance or

enforcement abroad; or (3) has some other reasonable relation with one or more

foreign states.  9 U.S.C. § 202; <u>see also</u> <u>Freudensprung v. Offshore Technical</u>

<u>Servs., Inc.</u>, 379 F.3d 327, 340 (5th Cir. 2004); <u>Hansen</u>, slip op. at 4; <u>Reddam</u>, slip

op. at 4.

Here, Plaintiff's allegations indicate the relationship between the parties both envisioned performance abroad and involved property located abroad.[9]  For example, Plaintiff alleges:

> . . . OPIS sought to generate a large, artificial capital loss through a complicated "basis-shift" transaction. . . . [T]he vehicle to accomplish this involved creation of a shell Cayman Island company, the U.S. client's purchase of an interest in a Cayman Island company, the Cayman Island company's purchases and sales of foreign bank stock [Deutsche Bank, in this instance] and options, and the U.S. client's purchases and sales of the foreign bank stock and options.

(First Am. Compl. ¶ 65.)  Plaintiff also alleges Defendants told Plaintiff's board members "the investment would be made with Germany's largest bank, Deutsche

---

[9]  Plaintiff devotes significant briefing to the question of what actually happened to the funds involved in the OPIS scheme.  (See Pl.'s Reply to Defs.' Resps. to Mot. to Remand at 9-11; Pl.'s Mot. to Remand at 3-6.)  The inquiry under § 202 is whether the legal relationship *envisions* performance abroad.  See 9 U.S.C. § 202.

For this same reason, the Court denies Plaintiff's Motion for Leave to Submit Supplemental Authorities.  Plaintiff requests leave to supplement the record with Felony Information and the transcript of the guilty plea thereto by a bank officer involved in a different type of tax shelter offered by KPMG known as Bond Linked Issue Premium Structure ("BLIPS").  Plaintiff claims these supplemental authorities may indicate there is no factual predicate for § 205 removal because there may not have been an international transfer of funds.  Notwithstanding the differences between BLIPS and OPIS, whether the funds were actually transferred internationally is not the correct inquiry.

Bank."  (Id. ¶ 94.)  Finally, an October 27, 1998 letter from DBAG to Plaintiff,

states "The purpose of this letter agreement . . . is to confirm the terms and

conditions of the transaction entered into between Deutsche Bank AG acting

through its Frankfurt branch . . . and Apple South, Inc. . . . ," and that the parties'

transaction involves "Shares of Common Stock of Deutsche Bank AG," traded on

the "Frankfurt Stock Exchange or Xetra . . .".  (Oct. 27, 1998 Letter, attached as

Ex. E to Pl.'s Mot. to Remand.)

    These allegations demonstrate the relationship between the parties at a

minimum envisioned performance abroad, and envisioned involving property

located abroad.  Accordingly, the arbitration agreement falls under the Convention

and Defendants properly removed the case to this Court pursuant to 9 U.S.C.

§ 205.  See Hansen, slip op. at 4 (denying motion to remand because the arbitration

agreement fell under the Convention; "the commercial relationship envisioned

performance abroad:  the implementation of a transaction involving millions of

dollars in loans from a foreign bank"); Reddam, slip op. at 4 (same); see generally

Beiser, 284 F.3d at 674 ("[W]e conclude that easy removal is exactly what

Congress intended in § 205.").[10]

      B.     <u>Defendants' Motion to Stay, Compel Arbitration and Dismiss</u>

      Having found Defendants' removal of this action proper, the Court next

turns to Defendants' Motions to Stay, Compel Arbitration and Dismiss.[11] [12]  The

Defendants, non-signatories to the Agreement, claim they are entitled to enforce the

agreement to arbitrate against Plaintiff under an equitable estoppel theory because

Plaintiff alleges a course of interdependent conduct between the Defendants and

DBSI, the signatory to the Agreement.  Plaintiff contends the Defendants cannot

---

    [10]  The Court grants Plaintiff's Second Motion for Leave to Submit
Supplemental Authorities [43] and has considered the February 21, 2006 Order
from the District Court of New Jersey in <u>Alfano v. BDO Seidman, LLP</u>, No. 05-
4430 (FSH) (D.N.J. Feb. 21, 2006).  However, the Court denies Plaintiff's motion
for preliminary discovery because the requirements of §§ 202 and 205 are clearly
met.  "The language of § 205 strongly suggests that Congress intended that district
courts continue to be able to assess their jurisdiction from the pleadings alone."
<u>Beiser</u>, 284 F.3d at 671.

    [11]  "The arbitrability of a dispute will ordinarily be the first issue the district
court decides after removal under § 205."  <u>Beiser</u>, 284 F.3d at 675.

    [12]  Defendants also request a stay pending resolution of class issues in two
class actions -- <u>Becnel v. KPMG LLP</u> and <u>Simon v. KPMG LLP</u>.  Because class
certification was denied in <u>Becnel</u>, (see Def. KPMG's Reply to Pl.'s Opp'n to
Defs.' Mot. to Compel Arbitration at 2), and Plaintiff opted out of <u>Simon</u>, (Notice
of Class Opt Out [42]), Defendants' request for a stay is moot.

-14-

enforce the arbitration agreement under this theory because DBSI is not alleged to be a "principal player in the scheme," and neither DBSI nor DBAG are parties to this action.  (Pl.'s Resp. to Defs.' Mots. to Compel Arbitration at 15.)

The issue presented here is whether a non-signatory to an arbitration agreement may compel arbitration with a signatory.[13]  As explained in <u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999), in view of the "healthy regard for the federal policy favoring arbitrations," this Circuit recognizes several situations in which a non-signatory can compel arbitration, including under a theory of equitable estoppel.

In <u>MS Dealer Service Corp.</u>, plaintiff brought suit against two defendants, claiming defendants improperly conspired to defraud plaintiff in connection with her purchase of a service contract, which contained an arbitration clause.  The defendant which did not sign the service contract moved to compel plaintiff to

_____

[13]  Plaintiff argues this action can be distinguished from those finding a non-signatory may compel arbitration because here the signatory is not a party and there is no current arbitration proceeding against the signatory.  Plaintiff's argument is not persuasive.  In <u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942 (11th Cir. 1999), the Eleventh Circuit found plaintiff was equitably estopped from avoiding arbitration with a non-signatory defendant, despite the signatory defendant already having obtained a favorable ruling from the arbitrator and the state court having dismissed with prejudice plaintiff's claims against the signatory defendant.

arbitrate her claims against it.  The Court found that equitable estoppel permits a

non-signatory to compel arbitration in two different circumstances.  First, equitable

estoppel applies when a plaintiff must rely on the terms of the written agreement

containing the arbitration provision in asserting its claims against the non-signatory.

"When each of a signatory's claims against a nonsignatory makes reference to or

presumes the existence of the written agreement, the signatory's claims arise out of

and relate directly to the written agreement, and arbitration is appropriate."  <u>MS

Dealer Serv. Corp.</u>, 177 F.3d at 947.  Second, equitable estoppel applies when a

plaintiff raises allegations of "substantially interdependent and concerted

misconduct by both the nonsignatory and one or more of the signatories to the

contract.  Otherwise, the arbitration proceedings between the two signatories would

be rendered meaningless and the federal policy in favor of arbitration effectively

thwarted."  <u>Id.</u> (quotation and citation omitted).  The Court found the non-signatory

defendant could compel arbitration because each of plaintiff's claims "makes

reference to and presumes the existence of" the contract which contained the

arbitration provision, and, moreover, plaintiff's claims against the signatory and

non-signatory "are based on the same facts and are inherently inseparable."  <u>Id.</u> at

947-48.  "MS Dealer is not a rigid test, and each case turns on its facts."  In re

Humana, Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002).

It is not clear whether the two circumstances giving rise to equitable estoppel

described in MS Dealer Service Corp. are both required, whether dependence on

the contract is required, or whether the two circumstances independently permit a

non-signatory to compel arbitration.  MS Dealer Service Corp. indicates that either

intertwined behavior or dependence on the contract is sufficient to invoke equitable

estoppel.  The Court in In re Humana, Inc. indicated that dependence on the

contract is necessary, even if intertwined behavior is present.  285 F.3d at 976

("The plaintiff's actual dependence on the underlying contract in making out the

claim against the nonsignatory defendant is therefore always the *sine qua non* of an

appropriate situation for applying equitable estoppel.").  In Blinco v. Green Tree

Servicing, LLC, 400 F.3d 1308 (11th Cir. 2005), the Court held that equitable

estoppel allowed a non-signatory to enforce an arbitration agreement because

Plaintiff's claim depended on the contract.  The Court did not address intertwined

behavior.  This Court, however, does not have to resolve any potential conflict in

the Circuit because both of the circumstances giving rise to equitable estoppel exist

here.

Plaintiff entered the Agreement containing the arbitration provision with DBSI, a subsidiary and agent of DBAG.  Plaintiff alleges intertwined and collusive behavior among the Defendants and DBAG, specifically alleging Defendants and DBAG engaged in multiple schemes and transactions to defraud Plaintiff, conspired together to violate the Georgia RICO statute, and constituted a "criminal enterprise."  Having reviewed Plaintiff's allegations, there is no question Plaintiff alleges concerted misconduct by DBAG and Defendants.

Plaintiff's claims also rely upon the existence of the Agreement -- the second circumstance giving rise to equitable estoppel.[14]  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."  MS Dealer Serv. Corp., 177 F.3d at 947 (quotation and citation omitted).

In this case, Plaintiff's claims are fundamentally related to the Agreement which contained the arbitration provision.  Plaintiff alleges the principal goal of the

---

[14]  A claim for breach of the contract containing the arbitration provision is not required to establish equitable estoppel.  See MS Dealer Serv. Corp., 177 F.3d at 948.

alleged conspiracy and fraud scheme was to induce Plaintiff, and victims similar to

Plaintiff, to effectuate OPIS through the brokerage account created by the

Agreement with DBSI.[15]  The Agreement with DBSI is necessarily a part of each

and all of Plaintiff's claims.  Because both circumstances giving rise to equitable

estoppel are present here, the non-signatory Defendants can compel arbitration.

Accord Reddam v. KPMG LLP, No. 04-1227 (C.D. Cal. Dec. 15, 2004) (applying

equitable estoppel standard from MS Dealer Service Corp. to similar facts and

finding non-signatory defendants can compel arbitration of claims against them);

Hansen v. KPMG LLP, No. 04-10525 (C.D. Cal. Mar. 29, 2005) (same).[16]

---

[15]  Plaintiff alleges:
> . . . OPIS sought to generate a large, artificial capital loss
> through a complicated "basis-shift" transaction. . . .
> [T]he vehicle to accomplish this involved creation of a
> shell Cayman Island company, the U.S. client's purchase
> of an interest in a Cayman Island company, the Cayman
> Island company's purchases and sales of foreign bank
> stock [Deutsche Bank, in this instance] and options, and
> the U.S. client's purchases and sales of the foreign bank
> stock and options.

(First Am. Compl. ¶ 65.)

[16]  Plaintiff contends the arbitration requested here by Defendants is
unavailable because the NASD issued a decision in Reddam to decline to arbitrate
the non-signatory parties' claims and defenses because they are not members of
NASD and have not signed an NASD arbitration agreement.  (Pl.'s Resp. to Defs.'
Mots. to Compel Arbitration at 3-4.)  Plaintiff's argument is not correct; the

**III.**   **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [10] is

**DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Stay Action

Pending Resolution of Class Issues, and thereafter, to Compel Arbitration and

Dismiss or, alternatively, for Additional Time to Respond to the Amended

Complaint [19, 20, 21, 27] are **GRANTED**, and this action shall be arbitrated

according to the terms of the arbitration agreement.

**IT IS FURTHER ORDERED** that this action is **STAYED** pending

completion of the arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File

Supplemental Authorities [36] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Leave to

Submit Supplemental Authorities [43] is **GRANTED**.

---

arbitration agreement here requires arbitration proceedings be conducted pursuant
to the "rules then in effect of" the NASD, but does not require the arbitration be
conducted by the NASD.

**SO ORDERED**, this 3rd day of March, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE